IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| EDWARD SHANE RUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 317-044 |
| | ) |
| DAMON T. HININGER, CEO of Correction | ) |
| Corporation of America (CCA); | ) |
| GREGORY C. DOZIER, Commissioner of | ) |
| Georgia Department of Corrections; | ) |
| DR. YVONNE NEAU, Wheeler Correctional | ) |
| Facility; VANCE LAUGHLIN, Warden, | ) |
| Wheeler Correctional Facility; and | ) |
| JOHN DOE QUINN, Deputy Warden of | ) |
| Care and Treatment, Wheeler | ) |
| Correctional Facility, | ) |
| | ) |
| Defendants. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Calhoun State Prison in Morgan, Georgia, is proceeding *in forma pauperis* in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.   BACKGROUND**

Plaintiff names (1) Damon T. Hininger, (2) Gregory C. Dozier, (3) Dr. Yvonne Neau, (4) Vance Laughlin, and (5) John Doe Quinn as Defendants. (Doc. no. 1, pp. 1, 4.) Taking

all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On July 22, 2015, while incarcerated at Wheeler Correctional Facility ("WCF"), Plaintiff noticed a "zit like bump in [his] groin area" and used a razor to shave off the whitehead. (Id. at 9.) The next day, the area was painful, swollen, and red. (Id.) Plaintiff reported the issue to P.A. Boone, who told Plaintiff to report to sick call the next morning. (Id.) Plaintiff developed a fever and increased pain that night. (Id.)

On July 24, 2015, at 6:00 a.m., Plaintiff went to the medical area for his unit. (Id.) P.A. Boone inspected Plaintiff and sent him back to his dorm until he could be taken to "main medical." (Id.) At 8:00 a.m., P.A. Boone escorted Plaintiff to the main medical area and said Dr. Neau would be with him shortly. By 10:30 a.m., Dr. Neau had not seen Plaintiff, while other inmates were being treated. (Id. at 10.) By this point, Plaintiff's testicles "had swollen to approximately the size of softballs and were filled with poison." (Id.) At 1:00 p.m., Plaintiff left medical to speak to "Deputy Warden of Care and Treatment Quinn." (Id.) Mr. Quinn told Plaintiff to return to medical and wait for his turn, which he did. (Id.)

Plaintiff remained in medical until 4:00 p.m., when he went to Warden Laughlin's office and "entered without permission." (Id.) Mr. Laughlin became "agitated about the interruption" and made a call to an unknown person. (Id.) Mr. Laughlin told Plaintiff he "was being made to wait because [he] was complaining and being a 'dick.'" (Id. at 11.) Plaintiff offered to show Mr. Laughlin his condition, but Mr. Laughlin told Plaintiff he "did

2

not want to see [his] 'nuts'" and told him to return to medical.  (Id.)  Mr. Laughlin refused Plaintiff's request to return to his dorm to wait.  (Id.)

Dr. Neau examined Plaintiff at 7:30 p.m.  (Id.)  Dr. Neau apologized for making Plaintiff wait after seeing his condition and explained Mr. Laughlin instructed her to see Plaintiff last.  (Id.)  Dr. Neau took a culture but said she could not send it until July 30, 2015.  (Id.)  Dr. Neau did not know the type of infection.  (Id.)  Dr. Neau numbed the area and performed a "surgical procedure," during which she made "unprofessional comments" about the size of Plaintiff's testicles and her hope Plaintiff did not want children.  (Id. at 12.)  Dr. Neau wrapped the area, prescribed a general antibiotic and painkillers, and instructed Plaintiff to come back every night for a dressing change.  (Id.)

Plaintiff's condition deteriorated quickly that same evening, to the point Dr. Neau called 911, and Plaintiff was taken by ambulance to a nearby hospital.  (Id.)  After administering "intense antibiotics" for several days, the hospital transferred Plaintiff to the "Augusta Doctors Hospital, Burn and Wound Unit," where Dr. Hasan treated Plaintiff.  (Id. at 12-13.)  Dr. Hasan explained to Plaintiff that Dr. Neau had failed to properly diagnose and treat Plaintiff's infection, leading to life-threatening gangrene that required immediate surgery.  (Id.)  Dr. Hasan told Plaintiff he faced a risk of amputation from the waist down.  (Id. at 13.)  Plaintiff underwent three surgeries in two weeks before being transferred to Augusta State Medical Prison.  (Id.)

After two follow-up visits from Dr. Hasan, Augusta State Medical Prison transferred Plaintiff to Calhoun State Prison, where the medical facility could not properly care for his wound.  (Id.)  A culture of his wound taken in October 2015 showed Plaintiff still had an

infection. (Id.) Dr. Hasan's follow-up was postponed until December 24, 2015, when the infection was stopped. (Id. at 14.) Plaintiff has severe nerve damage on the "left side groin area" and no feeling in his testicles. (Id.) Prison officials denied a sterility test. (Id.)

Plaintiff seeks $20 million in "pain and suffering and decline in quality of [his] personal life," and $10 million in punitive damages. (Id. at 6.)

## II.  DISCUSSION

### A.  Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not

4

require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff's Claim Should be Dismissed Because He Did Not Exhaust Administrative Remedies.

#### 1. The Exhaustion Requirement of the Prison Litigation Reform Act ("PLRA")

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Solliday v. Federal Officers, 413 F. App'x 206, 208

5

(11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Additionally, "implicit in [the exhaustion] requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses." Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000); see also Sewell v. Ramsey, No. CV 406-159, 2007 WL 201269, at *3 (S.D. Ga. Jan. 24, 2007) ("a grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally") (quoting Kikumura v. Osagie, 461 F.3d 1269, 1285 (10th Cir. 2006)). This does not require a prisoner to provide information he does not have or cannot reasonably contain, but it does require a

prisoner to include "relevant information about his claims, including the identity of those directly involved in the alleged deprivation[ ]." Brown, 212 F.3d at 1210; see also Thompson v. Corr. Corp. of Am., No. CV 510-069, 2011 WL 6941680, at *3 (S.D. Ga. Aug. 30, 2011), report and recommendation adopted, No. CV 510-069, 2012 WL 12682 (S.D. Ga. Jan. 3, 2012), aff'd, 485 F. App'x 345 (11th Cir. 2012) ("Plaintiff need not have used any particular words or phrases in his informal grievances. Nevertheless, there must be some assertion set forth in a grievance, whether informal or formal, which would alert the person against whom the grievance was filed that the inmate's complaint concerned him or her.").

Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### 2. The Prison Grievance Procedure

Because the dates of the alleged incidents are between July 22, 2015 and December 2015, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015. The administrative remedies

7

procedure commences with the filing of a grievance with the inmate's counselor. SOP IIB05-0001 § VI(D)(1)-(3). The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it. Id. § VI(D)(3), (5)(a). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § VI(D)(4). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(D)(5)(b)(2). Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted. Id. § VI(D)(7).

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond. Id. § VI(E)(2), (7). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(E).

### 3. Plaintiff's Failure to Exhaust

Here, Plaintiff admits he did not exhaust his administrative remedies prior to the commencement of this case, as is required under the PLRA, because he is currently waiting on a response to an appeal of his formal grievance. (Doc. no. 1, p. 4.) In order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a

"precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of his complaint Plaintiff failed to complete the entire grievance process prior to submitting the complaint. (Doc. no. 1, pp. 3-4.) Therefore, Plaintiff's complaint should be dismissed without prejudice.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 6th day of November, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA